FILED
JUL 1 3 2005
UNITED STATES
BANKRUPTCY COURT
FOR THE DISTRICT OF ARIZONA

# UNITED STATES BANKRUPTCY COURT
## IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In Re<br><br>JASON L. CLELLAND and<br>NANCY M. CLELLAND,<br><br>Debtors. | Chapter 7 Proceedings<br><br>Case No. BR-03-15725-PHX-CGC<br><br>Adversary No. 03-01071 |
| JASON L. CLELLAND,<br><br>Plaintiff.<br>v.<br>MARIE C. MOAK,<br><br>Defendant. | MEMORANDUM<br>DECISION RE: MOTION FOR<br>SUMMARY JUDGMENT<br><br>(Opinion to be Posted) |

The $41,200 judgment from the Justice of the Peace Court's misdemeanor proceeding is for criminal restitution. The dischargeability of the judgment is governed by *Kelly v. Robinson*, 479 U.S. 36, 107 S.Ct. 353, 93 L.Ed.2d 216 (1986), which held that criminal restitution orders are non-dischargeable under 11 U.S.C. section 523(a)(7). *Kelly* remains good law and has not been overruled by the Supreme Court. It is not for this Court to determine that the Supreme Court would decide the issue differently if presented today.

Debtor has argued that there is no final order from the state court. Any further proceedings concerning the restitution order, its amount, its finality or its enforceability are within the jurisdiction of the state courts, not this Court, and should be addressed accordingly. Debtors received their discharge on January 16, 2004; therefore, no relief from stay is required to proceed further in state court.

In this case, Debtor filed a motion for summary judgment predicated, in part, on the legal position that *Kelly* was not controlling and therefore Debtor was entitled to summary judgment.

| | | |
|---|---|---|
| 02436 | 4/25/01 | $23.61 |
| 02424 | 4/20/01 | $40,000 |
| 02298 | 3/20/01 | $40,000 |
| 02290 | 3/15/01 | $368.41 |

Defendants have conceded that two of the transfers, for $23.61 and $368.41, were preferential, leaving only the three $40,000 payments at issue now.

No one disputes these payments were made, were made from Debtor's general business checking account, were made within the ninety days prepetition, were on account of an antecedent debt owed by Debtor to Defendant, were made while Debtor was insolvent, were to or for the benefit of Defendant, or enabled Defendant to receive more than it would have had the transfers not been made. The sole question is whether the funds were a transfer of property of the Debtor or, more precisely, whether the payments are subject to the "earmarking doctrine," an exception to the avoidable preference statute.

According to Debtor, the funds used to make these payments were loaned by Jim Register, owner of Debtor Regcon, Inc. and personal guarantor on the debt to Defendant Hughes Supply, and earmarked for Defendant. The payments by Mr. Register passed first through Tres Cruces, LLC, another company owned and controlled by Mr. Register and allegedly earmarked solely to pay Debtor's debts to Defendant, in order to keep better track of the loans made.

II. Analysis

The earmarking doctrine applies "when a third party lends money to a debtor for the specific purpose of paying a selected creditor." *In re Kemp Pacific Fisheries, Inc.*, 16 F.3d 313, 316 (9th Cir. 1994). In order to prevail under the earmarking defense, Defendant must establish "(1) the existence of an agreement between the new lender and the debtor that the funds will be used to pay a specified antecedent debt; (2) performance of that agreement according to its terms; (3) the transaction as a whole . . . does not result in any diminution of the estate." *In re Superior Stamp & Coin Co., Inc.*, 223 F.3d 1004, 1008 (9th Cir. 2000) (quoting with acceptance *In re Bohlen*, 859 F.2d 561, 566 (8th Cir. 1998).

The doctrine sprung from situations where a debtor owed money to an existing creditor

- 2 -

> under circumstances in which another party was a guarantor of the debtor's obligation. . . . Where the guarantor paid to the [existing] creditor the money owed by the debtor (thereby becoming a "new creditor" of the debtor), the courts rejected the claim that such a payment was a voidable preference. Two principal rationales were used to justify the conclusion that no preference transfer had occurred: courts stated (1) that the transfer was of the new creditor's, not the debtor's property; and (2) that there was no diminution in the debtor's estate because the transaction merely substitutes one creditor for another.

*In re Superior Stamp*, 223 F.3d at 1008 (citing *In re Kemp*, 16 F.3d at 316, n.2; *In re Bohlen*, 859 F.2d at 565). It made no difference if the guarantor made the payments directly to the existing creditor or made them to the debtor with the express instruction that the funds were to be used to pay the debtor's obligation to the existing creditor. Court determined it would inequitable to avoid the transfer, place the money back into the bankruptcy estate, and then have the guarantor/new creditor liable a second time. This, claims Defendant, is exactly the situation here.

While this case does seem quite similar, Defendant overlooks some critical differences. As the cases all require, a key question to ask is who has control over the funds transferred – the debtor or the lender. *Id.* at 1008-09. If the debtor controls the disposition of the funds, then the payments constitute a preferential transfer. *Id.* at 1009. Possession of the funds by the debtor alone does not indicate debtor necessarily has control. Nor is it enough that debtor may have had the power to divert the funds elsewhere. The proper inquiry is "whether the debtor had the right to disburse the funds to whomever it wished, or whether their disbursement was limited to a particular old creditor or creditors under the agreement with the new creditor." *Id.* The problem in this case is that the lender in fact controls the Debtor, making this inquiry rather meaningless.

Further, the fact that Mr. Register is both the lender and owner of Debtor points out that there really was no meaningful agreement between himself and Debtor. Everyone agrees there was no written agreement. And, as far as any oral agreement, it is very easy for Mr. Register to say that he and Debtor Regcon had an agreement that the loaned funds would be used solely to pay Defendant under the repayment plan Debtor had with Defendant where he is both the principal of Debtor (and Tres Cruces) and the lender. This essentially amounts to an agreement with himself.

Further, even if Mr. Register intended the loan payments to be earmarked solely to

- 3 -

Defendant, the evidence shows that is not what happened. Instead, the evidence establishes that what Mr. Register was really doing was attempting to cover Debtor's outstanding debts on a rather ad hoc basis. Various payments made by Mr. Register to Debtor (through Tres Cruces) and purportedly earmarked for Defendant had little relation at times to what was currently owing Defendant under the repayment plan. Nor did their timing appear related to the payment due dates to Defendant. For example, the first payment to Defendant was due March 20, 2001. The first transfer allegedly earmarked for Defendant from Mr. Register to Tres Cruces, however, was made February 23, 2001, a month before the payment was due to Defendant. Further, the amount transferred from Mr. Register to Tres Cruces was $50,000, of which only $25,000 was transferred to Debtor. The March 20, 2001, payment for $40,000 was then timely made to Defendant by Debtor. The second transfer from Mr. Register to Tres Cruces occurred on April 3, 2001, in the amount of only $32,000. Seventeen days later, on April 20 2001, Tres Cruces transferred $36,500 (not $40,000 and not $32,000) to Debtor, who in turn transferred $40,000 to Defendant that same day. Tres Cruces made another transfer to Debtor that day of $58,000. Another transfer from Mr. Register to Tres Cruces happened on April 23, 2001, for $60,000. Last, Tres Cruces made another transfer to Debtor on May 23, 2001, in the amount of $41,000, but this payment was made after Debtor had already made its $40,000 payment to Defendant on May 20, 2001. The transfers simply do not match up with the amounts owed Defendant. Defendant's Exhibit 23 does nothing to change that fact.

Further, the alleged inequity that Defendant complains about is a bit disingenuous. Where Mr. Register is not only the guarantor of the debt, but also the owner of Debtor, the harm is somewhat diluted. Mr. Register made a choice. He chose to do what he believed was necessary to keep Debtor afloat for as long as he could, rather than paying the monies directly to Defendant himself, which would have avoided this current dispute. He elected to loan funds to Debtor in order for it to meet its obligations (to Defendant and others). He did this to protect his economic interests, as owner of Debtor.

### III. Conclusion

For the foregoing reasons, the Court finds that the three transfers from Debtor to

Case 2:03-ap-01071-CGC    Doc 26    Filed 07/13/05    Entered 07/14/05 15:47:10    Desc
Main Document    Page 4 of 5

Defendant for $120,000 preferential transfers and shall be voided. Counsel for the Trustee is to lodge a form of order consistent with this decision for the Court's signature.

So ordered.

DATED: July 13, 2005

Charles G. Case II
UNITED STATES BANKRUPTCY JUDGE

COPY of the foregoing mailed and/or via facsimile
this ___ day of July, 2005, to:

Law Office of Edwin Lee, P.C.
Guiseppe Acocella
21639 N. 12th Avenue, Suite 204
Phoenix, Arizona 85080
Attorneys for Trustee Robert J. Davis

Schmitt, Schneck, Smyth & Herrod, P.C.
Stephen G. Smyth
1221 E. Osborn Road, Suite 105
Phoenix, Arizona 85014
Attorneys for Defendant

- 5 -